R. Jeremy Adamson (12818)
Tucker F. Levis (17793)
Henry R. Morris (19020)
**BUCHALTER LLP**
60 E. South Temple Street, Suite 1200
Salt Lake City, UT 84111
Telephone: (801) 401-8625
jadamson@buchalter.com
tlevis@buchalter.com
hmorris@buchalter.com
*Attorneys for Receiver Chad S. Pehrson*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| CHAD S. PEHRSON, in his capacity as Court appointed Receiver,<br><br>Plaintiff,<br>v.<br><br>JACOB CAZIER, in his individual capacity,<br><br>Defendant. | **COMPLAINT**<br><br>**(Ancillary to Case No. 1:22-cv-00135-RJS-DBP – General Order 23-009)**<br><br>Civil No.: 2:26-cv-00073<br><br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

Receiver Chad S. Pehrson hereby alleges, avers, and complains of Defendants Jacob Cazier ("Cazier") and Cazier Group, LLC ("Cazier Group") (collectively, "Defendants") as follows:

**SHORT SUMMARY OF ACTION**

1. Plaintiff Chad Pehrson (the "Receiver") is acting in his capacity as Court-appointed Receiver in Case No. 1:22-cv-00135 pending in this District, over the assets of the Estate of Stephen Romney Swensen, which include the assets of WS Family, IP, LLC, Crew Capital Group, LLC, and Swensen Capital, LLC (collectively, the "Receivership Defendants").

2. Stephen R. Swensen ("Swensen") operated a classic Ponzi scheme since at least June 2011 until the death of Swensen in June 2022.

3. From at least 2011, Swensen offered and sold fictitious investments in Crew Capital, falsely claiming guaranteed annual returns of 5–10% and promoting it as a low-risk retirement investment. He used deceptive marketing materials, fake account statements, and a fraudulent website to lure investors.

4. Investor funds were deposited into a Wells Fargo account controlled solely by Swensen under the name Crew Capital. Swensen misappropriated these funds rather than investing them as promised.

5. In 2018, Cazier formally joined the scheme as Swensen's business partner and knowingly assisted in its expansion. Through Navigation Capital Group, LLC, which he co-managed with Swensen, Cazier promoted the fraudulent investments to clients, participated in financial planning meetings, and received investor funds despite knowing—or recklessly disregarding—that the investments were fictitious.

6. Cazier and his company, Cazier Group, received at least $296,290.97 in investor funds from Crew Capital without providing reasonably equivalent value. These transfers furthered the Ponzi scheme, and the Receiver seeks to recover them for the benefit of defrauded investors.

**PARTIES, JURISDICTION, AND VENUE**

7. On August 8, 2023, the Receiver was appointed by this Court to identify, collect, and preserve the estates of the Receivership Defendants for the benefit of the estate's creditors, including over fifty defrauded investors.

8. Cazier and Cazier Group are recipients of funds from the Ponzi scheme.

9. This Court has jurisdiction over the subject matter of this action because it is ancillary to the SEC Action and the appointment of the Receiver by this Court.

10. Plaintiff has explicitly been granted authority to pursue fraudulent transfer actions.

11. Cazier is a resident of Davis County, Utah.

12. Cazier Group is a single member limited liability company organized under the laws of Utah with a principal place of business in Davis County, Utah; Cazier is the only member and principal of Cazier Group.

13. Cazier and Cazier Group have sufficient minimum contacts with Utah that personal jurisdiction is appropriate in this Court. Personal jurisdiction is also proper pursuant to 28 U.S.C. §§ 754, 1367, 1692.

14. Venue is proper in this Court pursuant to 28 U.S.C. §§ 754, 1391(b).

## THE RECEIVER, STANDING, AND STATUS OF SEC ACTION

15. On October 14, 2022, the Securities and Exchange Commission ("SEC") filed a complaint against the Receivership Defendants in the United States District Court for the District of Utah, Case No. 1:22-cv-00135-RJS-DBP (the "SEC Action").

16. The SEC Action alleged that the Receivership Defendants fraudulently solicited over $29 million from investors, whom they tricked into investing in Crew Capital OPS, LLC ("Crew Capital"), which was allegedly co-managed by a reputable firm and purported to guarantee investors a minimum annual return.

17. The SEC alleged that the Receivership Defendants did not invest in any securities. Instead, they misappropriated essentially all investor funds to make Ponzi scheme payments to other investors and to pay for Swensen's personal expenses, such as real estate, vehicles and multiple private aircrafts, and living expenses for him and his family.

18. On August 8, 2023, the Court entered an Order Appointing Receiver and Staying Litigation (the "Appointing Order"), appointing Chad S. Pehrson as permanent Receiver.

19. Pursuant to the Appointing Order, the Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located.

20. The Receiver is further authorized to take immediate possession of all real property of the Receivership Defendants, wherever located.

21. The Receiver is further authorized to initiate suit to recover all property of the Receivership Defendants in the possession of third parties.

22. Since the entry of the Appointing Order, preliminary injunctions have been entered as to all the Receivership Defendants

## THE FRAUDULENT PONZI SCHEME

23. Swensen was a registered representative of broker-dealers Summit Brokerage Services, Inc. (March 2010 to June 2014), Allegis Investment Services, LLC (July 2014 to May 2018), and J.W. Cole Advisors, Inc. (May 2018 to June 2018), and Wealth Navigation Advisors (June 2018 to June 2022).

24. In the course of the Ponzi Scheme, the Receivership Defendants made material misrepresentations and omissions, misappropriated investments and other funds, and committed fraud as a commodity pool operator.

25. From at least July 2011, Swensen began offering and selling investments in Crew Capital Group, LLC. Swensen approached his customers and clients during meetings, during which he provided advice on their investment portfolios and retirement plans. He suggested that they include Crew Capital in their investment and retirement strategies.

26. Swensen informed investors that Crew Capital was a safe investment fund offering guaranteed minimum annual returns of 5%. He claimed that Crew Capital could provide their retirement income and described it as a safe option for their portfolios.

27. Swensen also provided some investors with written documentation about the fictitious Crew Capital investment, falsely portraying Crew Capital as an "actively managed portfolio" investing in senior secured floating rate loans and options on the S&P index.

28. Swensen created a website for Crew Capital with the help of a web developer and a graphic designer. Initially named Capital Cooperative, the website was found at www.capitalcoop.com. Later, when it became Crew Capital in 2015, the website changed to www.crewfunds.com. These sites claimed that Crew Capital could remove market risk, stating: "Do you want to eliminate market turbulence? Talk to your financial advisor about how." Swensen gave investors login details for these sites, where they could see their account balances, including fake returns. The accounts supposedly showed daily growth of the guaranteed 5% yearly returns, with an extra lump sum payment of up to another 5% annual return on the anniversary of their investment. However, these statements and claims were fabricated.

29. Swensen managed a bank account at Wells Fargo Bank under the name of Crew Capital. He had exclusive control over the account and used it to pool investor funds from Crew Capital.

30. Swensen acquired investor funds by instructing investors at different times to write personal checks to Crew Capital, obtaining cashier's checks payable to Crew Capital, wiring funds directly to Crew Capital's accounts at Wells Fargo Bank, and/or signing documents authorizing the transfer of funds into Crew Capital's account from their other investment or retirement accounts.

31. Cazier formally joined Swensen as a business partner in 2018 and became actively involved in the operations of Crew Capital. At that time, the Ponzi Scheme was well underway, and Cazier assumed a direct role in its continued execution and expansion.

32. Cazier regularly participated in financial planning meetings alongside Swensen, during which they discussed investment strategies with clients.

33. Cazier knowingly operated in concert with Swensen to perpetrate the fraudulent investment scheme. He was aware that clients were investing in Crew Capital and understood, or recklessly disregarded, that the purported investment structure and promised returns were fictitious and materially misleading. Despite this knowledge, Cazier continued to promote the investment and facilitated its sale to new and existing clients.

34. Through Navigation Capital Group, LLC ("Navigation Capital"), a business entity he co-managed with Swensen, Cazier provided investment advisory services, securities brokerage services, and insurance products to clients.

35. Cazier and Cazier Group received portions of the defrauded investors' funds from Swensen and Crew Capital.

36. The amount of investor funds Cazier received from Swensen and Crew Capital is no less than $296,290.97. The transfers of those funds to Cazier furthered the fraudulent investment scheme without any legally recognized value for the transferred money.

**FIRST CLAIM FOR RELIEF**
**(Avoidance of Fraudulent Transfers)**

37. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint herein by this reference.

38. The Receivership Defendants operated Crew Capital as a Ponzi scheme.

39. The Receivership Defendants paid Defendants at least $296,290.97 from accounts controlled by Swensen and Crew Capital. At the time of these transfers, the Receivership Defendants were insolvent or became insolvent as a result of the transfers, or were engaged in

business for which their remaining assets were unreasonably small in relation to their obligations. Defendants did not provide reasonably equivalent value in exchange for the funds received.

40. Because the Receivership Defendants operated a Ponzi scheme, as a matter of law, the transfers to Defendants were made with the intent to hinder, delay, or defraud creditors.

41. Defendants knew or should have known because of Cazier's longstanding relationship with Swensen that the transfers were not made in the ordinary course and were likely made in furtherance of fraudulent conduct.

42. Pursuant to Utah's Uniform Voidable Transactions Act, specifically Utah Code Ann. § 25-6-5 (actual fraud) and § 25-6-6 (constructive fraud), the Receiver may avoid and recover the transfers made to Cazier.

43. Defendants did not provide reasonably equivalent value to any Receivership Defendants for the amounts the Receiver seeks to avoid.

44. Pursuant to Utah's Uniform Voidable Transactions Act, including Utah Code Ann. § 25-6-5 (actual fraud) and § 25-6-6 (constructive fraud), the Receiver may avoid and recover the transfers made to Defendants.

**SECOND CLAIM FOR RELIEF**
**(Unjust Enrichment)**

45. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint herein by this reference.

46. The transfers to Defendants were comprised of property of the Receivership Defendants and were made by the Receivership Defendants in furtherance of the fraud scheme.

47. The transfers to Defendants conferred a benefit on Cazier and Cazier Group

48. Defendants knowingly accepted the benefits conferred by the Receivership Defendants.

49. Allowing Defendants to retain the transfers at issue in this lawsuit would unjustly enrich Defendants and be inequitable.

50. Defendants did not provide reasonably equivalent value to the Receivership Defendants in exchange for the transfers, which were made using funds obtained from defrauded investors. Allowing Defendants to retain these funds would unjustly enrich Defendants at the expense of the victims of the Ponzi Scheme, who are the rightful owners of the funds.

51. Absent the return of the transfers, the Receivership Estate would be damaged by Defendants' unjust enrichment and may have no adequate remedy at law.

52. Defendants must disgorge the amount of the transfers.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver requests judgment against Defendants as follows: (1) disgorging the amount of the transfers, which is expected to be no less than $296,290.97; (2) awarding pre- and post-judgment interest, costs, and reasonable attorney's fees allowed by law; (3) granting such other and further relief as the Court deems just and proper.

DATED this 28th day of January 2026.

**BUCHALTER LLP**

*/s/ R. Jeremy Adamson*
R. Jeremy Adamson
Tucker F. Levis
Henry Morris
*Attorneys for Receiver*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CHAD S. PEHRSON, in his capacity as Court appointed Receiver,

**(b)** County of Residence of First Listed Plaintiff: Salt Lake
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Buchalter LLP
R. Jeremy Adamson Tucker F. Levis ; Henry R. Morris
60 E. South Temple Street., Suite 1200 SLC, Utah 84111

## DEFENDANTS

JACOB CAZIER, in his individual capacity,

County of Residence of First Listed Defendant: ______
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☒ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
8 U.S.C. §§ 754, 1367, 1692

Brief description of cause:
Proceeds derived from illegal Ponzi scheme implemented by Stephen Romney Swensen

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 296,290.97

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE Robert J. Shelby DOCKET NUMBER 1:22-cv-135-RJS-DBP

DATE: 01/28/2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ R. Jeremy Adamson

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______